818 So.2d 959 (2002)
Kristi MILLER
v.
HEIDI'S INC. OF BATON ROUGE.
No. 2001 CA 0627.
Court of Appeal of Louisiana, First Circuit.
May 10, 2002.
*961 Richard F. Zimmerman, Jr., Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, for Plaintiff-Appellant Kristi Miller.
Keith L. Richardson, Guglielmo, Marks, Schutte, Terhoeve & Love, Baton Rouge, for Defendant-Appellee Heidi's Inc. of Baton Rouge.
Before: CARTER, C.J., PARRO, and CLAIBORNE[1], JJ.
PARRO, Judge.
Kristi Miller appeals a judgment of the City Court of Baton Rouge, in which the court awarded her wages in the amount of $93.78 against her former employer, Heidi's, Inc. of Baton Rouge (Heidi's), but did not award her statutory penalties and attorney fees. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Heidi's is a retail gift shop owned by Heidi and Brian Locicero. After two interviews with Heidi's store manager, Amy Lasseigne, Kristi was hired as a part-time weekend sales clerk and started work on January 30, 2000. She also worked on February 5 and 6, and received her first paycheck at the store on the 7th. Kristi then worked February 12, 13, and 19, but not the 20th, because her baby was very ill. Monday, February 21, was payday; Kristi was owed $93.78. The customary way employees were paid was by putting the employee's check in the employee's mail box at the store to be picked up. Kristi did not pick up her check on payday, but called later that week and told first Amy and then Heidi that she had decided not to work any longer, because her baby needed her attention.
Soon after talking to Kristi about her resignation, Heidi took the check out of Kristi's mail box, put a stamp on the envelope, took it to the post office, and mailed it to Kristi at the address shown on her employment application. However, Kristi never received the check; she had moved into a new apartment after completing her employment application, and the check had her former address printed on it. Kristi had given Amy her new telephone number at one of her employment interviews, but she had not given Amy her new address. Even when she picked up her first paycheck, which had the incorrect former address printed on it, Kristi did not give her new address to anyone at Heidi's.
Kristi called the store the week after she resigned and asked about her paycheck. One of the employees told her it was probably in the mail. During March, Kristi visited the store several times and was told by various employees that she would have to talk to Brian about the check, but he was always unavailable. She left messages for him to call her, but did *962 not hear from him. Two months went by, during which she did not receive the paycheck, nor did it clear the bank. Eventually, in early April, she talked to Brian on the telephone, told him she had never gotten her check, and explained about her change of address. After checking with the post office and determining there was nothing being held there for her or the store, Brian told Kristi he would re-issue a check if she would pay the bank's $15 stop payment fee. She refused, and on April 17, filed this suit for her unpaid wages, penalties, and attorney fees, pursuant to Louisiana Revised Statutes 23:631 and 632. When Heidi's responded to the suit on May 11, a re-issued check for $93.78 was attached to its response.
The re-issued check was not accepted; and the original paycheck was never received by Kristi, returned to Heidi's, or negotiated. Eventually the case went to trial. After hearing testimony and reviewing documentary evidence, the trial court took the case under advisement. In written reasons for judgment, the court reviewed the requirements of Louisiana Revised Statute 23:631(A)(1)(b) and (2) concerning payment to an employee upon resignation, and concluded:
The Court is persuaded that the plaintiff, Kristi Miller, has satisfied the necessary burden of proof that she was not compensated for February 12, 13 and 19, 2000. Accordingly, the Court renders judgment in favor of Kristi Miller and against Heidi's Inc. in the sum of $93.78 together with legal interest from judicial demand until May 11, 2000, and costs of court.
A judgment to this effect was signed September 22, 2000, and this appeal followed. In this appeal, Kristi claims the trial court erred in not awarding statutory penalties and attorney fees, pursuant to Louisiana Revised Statute 23:632.

APPLICABLE LAW
The pertinent sections of Louisiana Revised Statute 23:631 state the following:
A.(1)(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of resignation, whichever occurs first.
(2) Payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
The penalties for non-compliance with this statute are described in Louisiana Revised Statute 23:632, which states:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees *963 shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
Being penal in nature, these statutes must be strictly construed, and their provisions yield to equitable defenses. Boudreaux v. Hamilton Med. Group, Inc., 94-0879 (La.10/17/94), 644 So.2d 619, 621.
To recover penalty wages, the claimant must show that (1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand. Richard v. Vidrine Automotive Services, Inc., 98-1020 (La. App. 1st Cir.4/1/99), 729 So.2d 1174, 1177. Payment by mail is permitted by Louisiana Revised Statute 23:631, provided that postage is prepaid and the envelope is properly addressed with the employee's current address as shown in the employer's records. Pokey v. Five L Investments, Inc., 96-0018 (La.App. 1st Cir.9/27/96), 681 So.2d 489, 495. In the event payment is made by mail, the employer shall be deemed to have made such payment when it is mailed. LSA-R.S. 23:631(A)(2).
A trial court's findings of fact with regard to whether the plaintiff is entitled to penalty wages cannot be reversed on appeal in the absence of manifest error or unless clearly wrong. Loup v. Louisiana State School for the Deaf, 98-0329 (La.App. 1st Cir.2/19/99), 729 So.2d 689, 693. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable, evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).

ANALYSIS
After reviewing the record in this case, we conclude that the key to the trial court's judgment is the implicit factual finding that Heidi's mailed the check to Kristi at her address of record as soon as Kristi called to say she was resigning. The evidence in the record supports that finding. Heidi and Brian testified that immediately after speaking with Kristi, Heidi took the paycheck out of Kristi's mail box at the store in order to mail it to her. Brian said the store's computer was programmed to print the employee's address on the check so it would be visible through a window envelope. Heidi described the paycheck and the envelope in which the check was enclosed, including the window through which the employee's computer-printed address would be visible. Check stub number 3028 for Kristi's missing *964 paycheck in the amount of $93.78 is dated "2/21/2000" and shows Kristi's printed address as Heidi described it. The cancelled checks for two other employees, Nos. 3027 and 3029, are also dated "2/21/2000." Heidi had a detailed recollection of mailing the paycheck at the Millburn Station of the post office, because it was the first time she had returned to that location since the previous Christmas, when she had been the victim of a crime there and her wedding ring had been stolen. She also remembered hesitating at the mail slots, because one was for metered mail and the other was for stamped mail, and she had to pause briefly to be sure she put the stamped envelope with Kristi's paycheck in the correct mail slot. Heidi also said she returned to the post office after learning that, although Kristi had asked the post office to forward her mail to her new address, she had not received the paycheck several months after it was mailed. Heidi completed two consumer service cards at the post office on April 13, 2000, describing the problem and asking for assistance from the post office in locating the paycheck that was mailed; the customer copies of these forms are in the record.
On the employment application, Kristi's address is shown as 4033 Burbank Dr. # 19, Baton Rouge, LA 70808. Kristi said she completed the application while she was still living at that address and before being interviewed. Kristi admitted she did not remember the exact address for her new apartment when she was interviewed, so she did not give Amy her new address. Both of Kristi's check stubs are in the record, and show that her former address was printed on both checks. Both check stubs also contain the same typographical error showing the apartment number as "Numer 19," while the rest of the address is the same as that shown on the employment application. The repetition of this error supports Brian's testimony that once the address was entered into the computer from the employment application, it was automatically printed on the paychecks.
Although there was conflicting testimony concerning many of the details surrounding Kristi's claim, there was no conflict concerning these facts: (1) Heidi's owed Kristi $93.78; (2) Kristi's paycheck for that amount was computer-printed on 2/21/2000; (3) the address on the paycheck was the same as that shown on Kristi's employment application; (4) Kristi no longer lived at that address, but had not provided Heidi's with her new address; (5) the check was placed in Kristi's mail box in the store on payday; (6) as soon as Kristi resigned, Heidi took the check out of Kristi's mail box, affixed a stamp to the envelope, brought it to the post office, and mailed it; and (7) the address to which it was mailed, although incorrect, was Kristi's current address as shown on Heidi's records. Given these facts, under the clear wording of the statute, Heidi's is "deemed to have made" full payment to Kristi when the paycheck was mailed. See LSA-R.S. 23:631(A)(2). Heidi's had no further duty under this statute, as it had fulfilled the statutory requirements. Penalty wages are applicable only when an employer fails or refuses to comply with the statutory requirements. Because Heidi's had complied with those requirements, no penalty wages were due, and the trial court did not err in failing to award penalties.
Having so concluded, we must address whether the trial court erred in failing to award reasonable attorney fees. The jurisprudence has consistently held that reasonable attorney fees are to be awarded in the event that the employee files a well-founded suit for unpaid wages, even if penalty wages are not due. Suits *965 in which the recovery of back wages is granted are considered "well-founded." Cleary v. LEC Unwired, L.L.C., 00-2532 (La.App. 1st Cir.12/28/01), 804 So.2d 916, 923. At first glance, this case would seem to fall within that category, because the trial court did award Kristi $93.78, which the evidence showed she had earned, but had not received. However, the penalty statute states that attorney fees are to be allowed when a well-founded suit for any unpaid wages is filed. LSA-R.S. 23:632. Under the unique facts of this case, Kristi's wages were not "unpaid." Rather, they were deemed paid when the paycheck was mailed. See LSA-R.S. 23:631(A)(2). Accordingly, neither of the penalty provisions are applicable in this situation, and the trial court did not err in failing to award reasonable attorney fees.[2]
However, the evidence further established that Kristi never received the money that was owed to her, and that sometime in April, Heidi's became aware of that fact. As a matter of equity, Kristi was entitled to receive compensation for the work she had performed.[3] Therefore, the trial court acted within its equitable authority in requiring Heidi's to pay Kristi the amount of $93.78 that she had not received, interest from date of judicial demand until May 11, 2000 (when the check was tendered by Heidi's in connection with its responsive pleading), and court costs.

CONCLUSION
The judgment of the trial court ordering Heidi's to pay Kristi the sum of $93.78, interest from date of judicial demand until May 11, 2000, and court costs, is affirmed. All costs of this appeal are assessed against Kristi Miller.
AFFIRMED.
CLAIBORNE, J., concurs.
NOTES
[1] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We note also that there is no evidence in the record concerning the amount of time spent or rate charged by Kristi's attorney.
[3] The equitable remedy of unjust enrichment is allowed when the plaintiff has no other remedy at law. The root principle of unjustified enrichment is that the plaintiff suffers an economic detriment for which he should not be responsible, while the defendant receives an economic benefit for which he has not paid. Coastal Environmental Specialists, Inc. v. Chem-Lig Intern., Inc., 00-1936 (La.App. 1st Cir.11/9/01), 818 So.2d 12, 16. The trial court's decision accords with this equitable remedy.